IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Brenda C. Eldridge, | ) | Case No.: 05-04991-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | | |
| Estate of Elbie Chism, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.:  05-00190 |
| | ) | |
| Brenda C. Eldridge, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion**

The matters before the Court are:

1. A Motion for Judgment on the Pleadings (Proceeding No. 13) filed on December 9, 2005, by the defendant-debtor;

2. A Motion for Summary Judgment (Proceeding No. 14) filed on December 12, 2005, by the plaintiff;

3. A Response to Debtor's Motion for Judgment on the Pleadings (Proceeding No. 17) filed on December 30, 2005, by the plaintiff;

4. A Response to Motion for Summary Judgment (Proceeding No. 18) filed on December 30, 2005, by the defendant-debtor;

5. An Objection to and Motion to Strike Affidavits of Darlene Winston, Patricia Semancheck, and Joyce Perkins Filed in Support of Plaintiff's Motion for Summary Judgment (Proceeding No. 19) filed on January 13, 2006, by the defendant-debtor;

6. A  Motion to Strike (Proceeding No. 29) filed on July 5, 2006, by the plaintiff;

7. A <u>Debtor's Objection to Plaintiff's Motion to Strike</u> (Proceeding No. 30) filed on July 7, 2006, by the defendant-debtor.

A hearing on all matters, except items 6 and 7, was held on February 7, 2006. Mr. William C. Veal, the attorney for the plaintiff, and Mr. Ronald E. Boackle, the attorney for the defendant, appeared. The matters were submitted on the pleadings, affidavits, and other documents submitted by the parties, the record in this adversary proceeding, the record in Bankruptcy Case No. 05-04991-BGC-7, and the arguments and briefs of counsel. As explained below, this Court finds that the pending adversary proceeding is due to be dismissed.

## I. Background

Neither of the parties believes that a trial is necessary to resolve the matters before the Court. Neither believes that the other is entitled to a trial. And each believes that it is entitled to a judgment in its favor, again without a trial. As discussed below, the Court agrees. A trial is not necessary, and all matters may be resolved without further hearings or arguments.

The question raised by the complaint is whether a debt the plaintiff contends is owed by the defendant is dischargeable through this bankruptcy case.[1]

---

[1] The plaintiff contends that the debtor committed fraud or defalcation while acting in a fiduciary capacity and as such the debt it contends it is owed by the debtor would be nondischargeable pursuant to section 523(a)(4) of the Bankruptcy Code. Section 523(a)(4) reads, " A discharge under section 727... of this title does not discharge an individual debtor from any debt – for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...." 11 U.S.C. § 523(a)(4). While the complaint purports to be grounded in 11 U.S.C. § 523(a)(2)(A) and (B), the factual allegations contained in the complaint describe a 523(a)(4) cause of action and otherwise describe no basis for granting relief pursuant to either section 523(a)(2)(A) or (B).

In addition, the plaintiff's motion for summary judgment is based on section 523(a)(4). It discusses the "facts" alleged in the complaint and sought to be proved by the affidavits and documents filed in support of the motion in light of section 523(a)(4), and contains no reference to either section 523(a)(2)(A) or (B). In addition, at the two hearings conducted in this matter, counsel for the plaintiff has couched and discussed the issues, contentions and allegations in light of section 523(a)(4), and has mentioned neither section 523(a)(2)(A) or (B).

The Court must conclude that the plaintiff is actually requesting no relief based on either section 523(a)(2)(A) or (B), but instead is seeking relief pursuant to section 523(a)(4), which makes nondischargeable "a debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). But in either event, all issues may be resolved without considering this question in detail.

## II. The Parties' Positions

### A. The Plaintiff

The plaintiff's procedural position is contained in its Motion for Summary Judgment filed December 12, 2005. The plaintiff contends that it is entitled to summary judgment because: (1) the state probate court's judgment conclusively established that Mrs. Eldridge committed, "fraud or defalcation for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," for purposes of 11 U.S.C. § 523(a)(4); and, (2) this Court is bound by that ruling because the doctrine of "collateral estoppel" precludes the debtor from relitigating that issue in this proceeding. The plaintiff concludes that because the requirements of section 523(a)(4) are met, the debt it contends it is owed by the debtor is a nondischargeable debt.[2]

The plaintiff concludes that the probate court has already ruled in its favor and as such there are no genuine issues of material fact, and that based on the probate court judgment, it is entitled to judgment here on the dischargeability question, as a matter of law.

### B. The Defendant-debtor

The defendant-debtor's procedural position is contained in her Motion for Judgment on the Pleadings filed on December 9, 2005.[3] The debtor contends that the present proceeding must be dismissed because this plaintiff did not have the right to bring the pending complaint against the debtor. In legal terms, the debtor argues that the plaintiff did not have lawful "standing" to maintain the pending action.[4] As Justice Lewis F. Powell, Jr. wrote for the U.S. Supreme Court in Warth v. Seldin, 422 U.S. 490

---

[2] Summary judgment is defined as, "A judgment granted on a claim about which there is no genuine issue of material fact and upon which the movant is entitled to prevail as a matter of law." Black's Law Dictionary 1449 (7th ed. 1999).

Collateral estoppel is defined as, "An affirmative defense barring a party from relitigating an issue determined against that party in an earlier action, even if the second action differs significantly from the first one." Black's Law Dictionary 256 (7th ed. 1999).

[3] A "judgment on the pleadings" is defined as, "A judgment based solely on the allegations and information contained in the pleadings, and not on any outside matters." Black's Law Dictionary 848 (7th ed. 1999).

[4] "Standing" is defined as, "A party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary 1413 (7th ed. 1999).

3

(1975), standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Id. at 499.[5]

As the last sentence indicates, this Court must address the question of standing first. If the plaintiff does not have standing, there are no other issues to decide.

### III. Issue

The threshold issue is: Did the plaintiff have standing to bring the pending complaint? As discussed below, the Court finds that the plaintiff did not have standing, therefore there are no remaining issues to be considered, and the pending action must be dismissed.

### IV. Findings of Fact

Mrs. Elbie Chism was the debtor's mother. On November 12, 1996, Mrs. Eldridge, the debtor-defendant, was appointed as guardian for her mother and conservator of her mother's estate.[6] At that time, Mrs. Chism was suffering from serious medical problems. Mrs. Chism died on June 13, 2002.

At the time of Mrs. Eldridge's appointment, Mrs. Chism was either residing with Mrs. Eldridge, or moved in with her, where she was cared for by Mrs. Eldridge and the members of Mrs. Eldridge's immediate family. That care was rendered around the clock for the next six years until Mrs. Chism died.[7]

Also at the time of Mrs. Eldridge's appoint, a bond in the amount of $10,000 was set by the probate court and posted by Mrs. Eldridge's surety company.

Shortly after her appointment, Mrs. Eldridge filed an inventory of Mrs. Chism's estate with the probate court on November 19, 1996.[8] That document indicates that Mrs. Chism's estate consisted of her house, a $4,300 certificate of deposit at the First

---

[5] See Camp Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257 (11th Cir. 2006), Bochese v. Town of Ponce Inlet, 405 F.3d 964 (11th Cir. 2005), and Florida Public Interest Research Group Citizen Lobby, Inc. v. E.P.A., 386 F.3d 1070 (11th Cir. 2004).

[6] Order Appointing Guardian and Conservator Upon Filing Bond dated November 12, 1996 (Exhibit D to Response to Motion for Summary Judgment (Proceeding No. 18) filed on December 30, 2005, by the defendant).

[7] Affidavit of Brenda Eldridge (Exhibit A to Response to Motion for Summary Judgment (Proceeding No. 18) filed on December 30, 2005, by the defendant).

[8] Inventory dated November 18, 1996 (Exhibits submitted by plaintiff in support of its motion for summary judgment on February 8, 2006 (Proceeding No. 24)).

4

National Bank of Jasper, $730 a month in social security benefits, and $65 per month in pension benefits.

Around February 18, 1997, Mrs. Eldridge sought and obtained an order from the probate court permitting her to use $806.47 each month from Mrs. Chism's estate for her support and maintenance, which, of course, represented all of the income that she was receiving from her pension and social security.[9] At that same time, Mrs. Eldridge obtained an order from the probate court authorizing her to sell Mrs. Chism's home by private sale for $50,000.[10]

On September 13, 2001, the probate court entered an order that removed Mrs. Eldridge as conservator of Mrs. Chism's estate and directed her to file a final settlement within 30 days of that date.[11] That order stated it was entered in response to a "Motion to be Relieved on Bond" filed by Mrs. Eldridge's surety.

Mrs. Eldridge did not file a final settlement as directed by the probate court. Consequently, on May 9, 2002, the probate court directed Mrs. Eldridge's surety to file a final settlement within 30 days of that date.[12] As stated above, Mrs. Chism died on June 3, 2002.

On November 21, 2002, Mrs. Eldridge's surety filed a document entitled "Petition for Final Settlement by Surety." That document read in part:

> Comes now the petitioner, TRINITY UNIVERSAL **SURETY COMPANY,** as surety on the bond of the Conservator in the estate of Elbie Chism, a protected person (by and through one of its attorneys of record) and pursuant to this Court's Order of May 9, 2002, copy attached as Exhibit A, respectfully submits to this Court the following report of the acts and doings, to the best of its knowledge and information, for the period from November, 1996 to August, 2002.

---

[9] <u>Order Allowing Conservator to Use a Part of the Ward's Estate for Support</u> dated February 18, 1997 (Exhibits submitted by plaintiff in support of its motion for summary judgment on February 8, 2006 (Proceeding No. 24)).

[10] <u>Petition to Sell Property of Ward for Reinvestment</u> dated December 11, 1996, and order granting it stamped on the same dated February 18, 1997 (Exhibits submitted by plaintiff in support of its motion for summary judgment on February 8, 2006 (Proceeding No. 24)).

[11] <u>Order on Motion to Be Relieved of Bond</u> dated September 13, 2001 (Exhibit G to <u>Response to Motion for Summary Judgment</u> (Proceeding No. 18) filed on December 30, 2005, by the defendant).

[12] <u>Decree Ordering Bonding Company to File Final Settlement</u> dated May 9, 2002 (Exhibits submitted by plaintiff in support of its motion for summary judgment on February 8, 2006 (Proceeding No. 24)).

5

1. Brenda Eldridge was appointed Conservator by this Court on November 19,1996; and said conservatorship is now pending in this Court. A copy of said Letters of Conservatorship are attached hereto as Exhibit B.

2. An Inventory was filed by said Conservator on or about November 19, 1996, a copy of which is attached hereto as Exhibit C.

3. A Petition to Sell Property of Ward for Reinvestment was filed by said Conservator on or about December 11, 1996 and was granted by this Court on February 18, 1997. A copy attached as Exhibit D.

4. A Petition for Maintenance and Support of a Protected Person was filed by the Conservator on or about December 11, 1996 and was granted by this Court on February 18, 1997. A copy attached as Exhibit E.

5. A copy of the Closing Statement related to sale of the property is attached hereto as Exhibit F.

6. It appears that the ward's only income was her Social Security check and a check for $65 a month from GATX Pension Fund.

7. As a result of petitioner's efforts to locate all of the assets belonging to the ward pursuant to the Inventory filed by the Conservator, the petitioner reports as follows:

   a. <u>House and Lot at 781 Main Street</u>. This property was sold as stated in paragraphs 3 and 5 above. The proceeds from the sale of this property could not be accounted for in the conservatorship bank account. If the ward had another bank account or investment account, it has not been located by the petitioner, after a written inquiry to known financial institutions in the greater Birmingham area.

   b. Certificate of Deposit in the amount of $4,300 at the First National Bank of Jasper. This CD is no longer at the First National Bank and its disposition can not be ascertained. According to bank officials, their records are destroyed after five or six years and no record could be found of this CD. The proceeds from this CD could not be accounted from in the conservatorship bank account.

8. For the period from November, 1996 to August, 2002, the Conservator made numerous deposits and wrote numerous checks on the bank account of the conservatorship. Attached hereto are copies of the those bank statements and checks, marked as Exhibit G. These statements were provided Regions Bank directly to the petitioner. None of the information came from the Conservator. As is shown on the enclosed statements the beginning balance was $130 and the present balance is $856.65.

6

9. There has been no accounting or partial settlement of this conservatorship by the Conservator.

10. The Conservator, Brenda Eldridge, was removed as conservator on September 13, 2001.

11. The ward died on June 3, 2002.

12. To the knowledge of the petitioner, no administration of the ward's estate has been opened in any court.

13. Listed below are the names and addresses of the ward's nearest adult kin as represented on the original Petition for Letters of Guardianship and Conservatorship filed by the Conservator:

1. Pat Samencheck, daughter, Kitty Hawk Circle, Gulf Breeze, FL 32561;
2. Betty Joyce Perkins, daughter, 1033 Mullberry Hills Road, Hayden, AL 35079;
3. Barbara Darlene Winston, daughter, 7760 Hanahan Place, Lake Worth, FL 33467;
4. Bobby Randall Chism, son, 1180 Mullberry Hills Road, Hayden, AL 35079;
5. Brenda Eldridge, daughter, 2412 5th Street NW., Birmingham, AL 35215.

WHEREFORE, the petitioner submits the foregoing report and requests that this Court appoint a day for hearing this settlement, give such notice of same to the ward's personal representative, or, if none to such administrator ad litem as this Court shall appoint, including due notice, service and appointment of a guardian ad litem, if appropriate, examine and audit said report of account, state the same and render a decree passing said account as stated and record same, and fix, determine and allow the petitioner and its attorney such fees and awards as may appear fair and just with respect to their services and expenses in the premises. The petitioner further requests that the said surety be henceforth discharged from all other or further liability for or on account of the administration of said conservatorship.

<u>Petition for Final Settlement by Surety</u> dated November 21, 2002 (Exhibits submitted by plaintiff in support of its motion for summary judgment on February 8, 2006 (Proceeding No. 24)).

According to the affidavits of three of the debtor's sisters, Ms. Darlene Winston, Ms. Joyce Perkins, and Ms. Pattie Semancheck, which were filed by the plaintiff in support of its summary judgment motion, a hearing was held in the probate court on the surety's petition for final settlement on January 29, 2003. Attending were the three affiants; Mr. Larry Merchant, a representative of the Probate Court; Ms. Judy Shepura,

7

the attorney for the surety; and Ms. Anita Terry Tye, who is identified in two of the affidavits as "the attorney for the Estate," and in the other as "representing the heirs."[13]

Based on the information before it, on January 29, 2003, the probate court entered a judgment against Mrs. Eldridge. That judgment is the subject of the nondischargeability complaint pending before this Court. The probate court's order provided:

> This cause comes on to be heard for examining and auditing the account heretofore filed by Judy B. Shepura as Attorney for Trinity Universal Surety Company, as Surety on the bond issued to Brenda Eldridge as Conservator of the estate of Elbie Chism, a Protected Person, now Deceased, for a final settlement of said conservatorship, now comes the said Judy B. Shepura as Attorney for Trinity Universal Surety Company, as Surety, and moves the Court to proceed with said settlement.
>
> It appears to the Court from proper evidence that due notice of the time and nature of said settlement has been given in strict accordance with law, the Surety being present at said settlement hearing, and no person having appeared to contest said settlement or any part thereof; the Court, having examined and audited said account for final settlement, proceeds to state the same.
>
> It appears to the Court that the said Trinity Universal Surety Company, as Surety, is chargeable with the sum of $59,775.85, as shown by its account of the assets received by it, in addition to the following charges:
>
> | | |
> |---|---|
> | Court costs | $846.00 |
> | Earnest money charged back on sale of house | $10,000.00 |
> | Charge back on sale of house | $40,068.50 |
> | Charge back on Certificate of Deposit | $4,300.00 |
>
> leaving a total charge of the sum of $114,990.35, due said Ward.
>
> Whereas it appears to the Court that the said former Conservator, Brenda Eldridge, has breached her fiduciary duty to her said Ward, therefore a Judgment is rendered against Brenda Eldridge and her bond company, Trinity Universal Surety Company, in favor of the Deceased estate of Elbie Chism, in the sum of $114,990.35, and Judgment ordered to be paid to Jefferson County Probate Court Trust Fund for the Personal Representative of the Deceased estate of Elbie Chism. Trinity Universal Surety Company is hereby ordered to pay the penal sum of their bond in the amount of $10,000.00 to the Jefferson County Probate Court Trust Fund. **Upon payment of said sum, the Court is directed to transfer and assign said judgment to the payor**.

---

[13] Affidavit of Darlene Wilson; Affidavit of Patricia Semancheck; and Affidavit of Joyce Perkins (Exhibits A, B, and C to Motion for Summary Judgment (Proceeding No. 14) filed on December 12, 2005, by the plaintiff).

8

> It is therefore ORDERED, ADJUDGED AND DECREED by the Court that the said account and vouchers, as stated, be and the same are hereby passed and allowed and ordered to he recorded. It is further ORDERED that the costs of this proceeding be and hereby are taxed against the former Conservator, Brenda Eldridge, for all of which execution may issue and from the operation and effect of this decree there can be no claim of exemption as to personal property asserted.

<u>Decree on Final Settlement</u> dated January 29, 2003 (Exhibits submitted by plaintiff in support of its motion for summary judgment on February 8, 2006 (Proceeding No. 24)) (emphasis added).

The court also executed a separate document that same date entitled "Decree Rendering Judgment." That document read:

> WHEREAS, in the above estate of Elbie Chism, a Protected Person, now Deceased, it is the opinion of the Court that the former Conservator, Brenda Eldridge, has breached her fiduciary duty to her said Ward, and Judgment is hereby rendered against Brenda Eldridge and her surety, Trinity Universal Surety Company, in favor of the Deceased estate of Elbie Chism, in the sum of $114,990.35. Trinity Universal Surety Company is hereby ordered to pay the penal sum of their bond in the amount of $10,000.00 to the Jefferson County Probate Court Trust Fund.
>
> It is therefore ORDERED, ADJUDGED, AND DECREED that **upon payment of said sum to the Jefferson County Probate Court Trust Fund for Personal Representative of the Deceased estate of Elbie Chism, the said Court is directed to transfer and assign said judgment to the payor**.

<u>Decree Rendering Judgment</u> dated January 29, 2003 (Exhibit D to <u>Motion for Summary Judgment</u> (Proceeding No. 14) filed on December 12, 2005, by the plaintiff) (emphasis added).

Mrs. Eldridge filed her Chapter 7 petition on May 20, 2005.

The plaintiff filed the pending adversary proceeding on August 22, 2005. The named plaintiff in the proceeding is "the Estate of Elbie Chism, a protected person now deceased." In contrast to the designation of the "named" plaintiff, there is nothing in the complaint that suggests an administration of Mrs. Chism's estate has been instituted in the probate court, or that any will has been submitted for probate to that court, or that a personal representative has been appointed to administer Mrs. Chism's estate.

9

## V. Conclusions of Law

### A. The plaintiff lacks standing because the judgment on which its complaint is based was assigned absolutely to the surety.

#### 1. Factual Conclusions

The probate court's "Decree on Final Settlement" unequivocally mandates that, upon payment by the surety of the amount of its bond into the probate court, the judgment against Mrs. Eldridge would be assigned and transferred to the surety. The court's decree reads:

> Whereas it appears to the Court that the said former Conservator, Brenda Eldridge, has breached her fiduciary duty to her said Ward, therefore a Judgment is rendered against Brenda Eldridge and her bond company, Trinity Universal Surety Company, in favor of the Deceased estate of Elbie Chism, in the sum of $114,990.35, and Judgment ordered to be paid to Jefferson County Probate Court Trust Fund for the Personal Representative of the Deceased estate of Elbie Chism. **Trinity Universal Surety Company is hereby ordered to pay the penal sum of their bond in the amount of $10,000.00 to the Jefferson County Probate Court Trust Fund. Upon payment of said sum, the Court is directed to transfer and assign said judgment to the payor**.

<u>Decree on Final Settlement</u> dated January 29, 2003 (Exhibits submitted by plaintiff in support of its motion for summary judgment on February 8, 2006 (Proceeding No. 24))(emphasis added).

The court plainly reiterated that mandate in its "Decree Rendering Judgment". That decree reads:

> WHEREAS, in the above estate of Elbie Chism, a Protected Person, now Deceased, it is the opinion of the Court that the former Conservator, Brenda Eldridge, has breached her fiduciary duty to her said Ward, and Judgment is hereby rendered against Brenda Eldridge and her surety, Trinity Universal Surety Company, in favor of the Deceased estate of Elide Chism, in the sum of $114,990.35. Trinity Universal Surety Company is hereby ordered to pay the penal sum of their bond in the amount of $10,000.00 to the Jefferson County Probate Court Trust Fund.
>
> **It is therefore ORDERED, ADJUDGED, AND DECREED that upon payment of said sum to the Jefferson County Probate Court Trust Fund for Personal Representative of the Deceased estate of Elbie Chism, the said Court is directed to transfer and assign said judgment to the payor**.

10

Decree Rendering Judgment dated January 29, 2003 (Exhibit D to Motion for Summary Judgment (Proceeding No. 14) filed on December 12, 2005, by the plaintiff))(emphasis added).

In its Response to Debtor's Motion for Judgment on the Pleadings (Proceeding No. 17), the plaintiff represented that the surety had indeed paid the amount of its bond into the probate court. The plaintiff wrote, "The Trinity Universal Surety Company has paid the bonding amount of $10,000.00...." Id. at 2.

Based on the above, this Court must therefore conclude that pursuant to the probate court's decree and judgment, and the plaintiff's acknowledgment that the surety paid the $10,000 ordered by the probate court, that the judgment on which the plaintiff relies was assigned and transferred to the surety when it paid the money into court. **At that moment, the judgment became the absolute property of the surety company and Mrs. Elbie Chism's estate was, consequently, divested of any interest in the judgment**.

## 2. Legal Conclusions

Jurisdiction is a, "court's power to decide a case." Black's Law Dictionary 855 (7th ed. 1999). Without jurisdiction, a Court cannot act. That is the situation here. Where a party brings an action before a court but does not have standing to bring the action, then that court would not have jurisdiction over the matter brought and therefore could not then decide that matter. This is as basic as the law can get.

Standing is a jurisdictional requirement. That is, a trial court acquires no subject-matter jurisdiction over a suit instituted by one who lacks standing and must dismiss the same. State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999).

Writing for the court in Wilson v. Minor, 220 F.3d 1297 (11th Cir. 2000), Circuit Judge Stanley Marcus explained:

> Of course, a federal court has an independent obligation to ensure that it has jurisdiction over any claim brought before it even if jurisdictional questions are not raised by either party. See United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (noting that "[t]he question of standing is not subject to waiver.... 'The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.' ") (quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-31, 110 S.Ct. 596, 607-08, 107 L.Ed.2d 603 (1990)) (internal quotation marks omitted); University of South Alabama v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir.1999) (emphasizing that "it is well settled that a federal court is

obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking").

Id. at 1302 n.11.

And, writing for the United States Supreme Court in FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990), Justice Sandra Day O'Connor explained, "The federal courts are under an independent obligation to examine their own jurisdiction, and **standing "is perhaps the most important of [the jurisdictional] doctrines**." Id. at 231 (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)) (emphasis added).

The focus of the standing inquiry is "whether the plaintiff is the proper party to bring this suit." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 976 (11th Cir. 2005) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). As the above explains, that question is not a technical one that may be ignored. As demonstrated by the result in this case, the answer to it has serious consequences.

When the judgment subject to the complaint before this Court was assigned to the surety company, Mrs. Chism's estate lost all rights in that judgment and whatever rights that estate may have otherwise had to enforce that judgment against Mrs. Eldridge were terminated as a result of the assignment and transfer of the same to the surety. Consequently, the plaintiff has no right or authority to seek or prosecute collection of that judgment either on its own behalf or own behalf of the judgment's true owner, the surety company, by way of this adversary proceeding. Therefore the plaintiff does not have standing to bring the action now pending before this Court and the pending complaint is due to be dismissed.

The plaintiff's only response to the defendant's standing argument is to assure this Court that the surety, "will be repaid such an amount upon collection of the judgment amount from the debtor." Response to Debtor's Motion for Judgment on the Pleadings at 2. That is not what was ordered by the probate court. That court was explicit in its order, that is, if the $10,000 were paid, the judgment is assigned. Because the $10,000 was paid, the judgment was assigned.

Based on the above, the Court finds that the plaintiff did not have standing to bring the pending complaint and therefore this Court does not have jurisdiction to hear this matter. Consequently, the pending complaint is due to be dismissed.

### 3. The plaintiff also lacks standing because it is not the personal representative of the decedent's estate.

Even if the judgment of the probate court had not been assigned and transferred to Mrs. Eldridge's surety, based on the facts before it, this Court finds that the plaintiff

12

still lacks the standing necessary to file or maintain the present adversary proceeding. The named plaintiff in the proceeding is "the Estate of Elbie Chism, a protected person now deceased." Under Alabama law, only the decedent's personal representative has specific statutory authority to file and prosecute lawsuits on behalf of said decedent's estate. A series of sections from the Code of Alabama help explain.

Section 43-2-833(c) of the Code of Alabama reads:

> Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this state at death has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as the decedent had immediately prior to death.

Code of Ala., 1975 § 43-2-833(c).

And section 43-2-843(18) reads, "a personal representative, acting prudently for the benefit of the interested persons, may properly: ... (18) Prosecute or defend claims or proceedings in any jurisdiction for the protection or benefit of the estate and of the personal representative in the performance of duties of the personal representative." Code of Ala., 1975 § 43-2-843(18).

The above identify a personal representative's power to exercise the same power over property of the decedent's probate estate that an absolute owner would have. And, section 43-2-839 of the Alabama Code adds, "Until termination of the appointment, a personal representative has the same power over the title to property of the estate, subject to Sections 43-2-843 and 43-2-844, that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate." Code of Ala., 1975 § 43-2-839.

Furthermore, the personal claims of a decedent which existed prior to his or her death, if they survive at all, only survive in favor of the decedent's personal representative, and no one else. Section 6-5-462 of the Alabama Code reads, "all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives." Code of Ala., 1975 § 6-5-462.

Accordingly, "An action filed on behalf of the estate must be brought by the [decedent's personal representative]." <u>Douglass v. Jones</u>, 628 So.2d 940, 941 (Ala. Ct. App. 1993). Therefore, no one other than the decedent's personal representative, including relatives, or heirs, or beneficiaries, or "the estate" itself, has legal standing to file or prosecute an action on behalf of the estate. <u>Ogle v. Gordon</u>, 706 So.2d 707, 710 (Ala. 1997); <u>Ellis v. Hilburn</u>, 688 So.2d 236, 238 (Ala. 1997); <u>Waters v. Hipp</u>, 600 So.2d 981, 982 (Ala. 1992); <u>Holyfield v. Motes</u>, 565 So.2d 186, 187 (Ala. 1990); <u>Brown v.</u>

13

Case 05-00190-BGC    Doc 31    Filed 08/30/06    Entered 08/30/06 12:44:17    Desc Main
Document    Page 13 of 16

Mounger, 541 So.2d 463, 464 (Ala. 1989); Vest v. Dixie-Midwest Express, Inc., 537 So.2d 13, 14 (Ala. 1988); Stone v. Jones, 530 So.2d 232, 235 (Ala. 1988); Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala. 1988); Downtown Nursing Home, Inc. v. Pool, 375 So. 2d 465, 466 (Ala. 1979), cert. denied, 445 U.S. 930 (1980); Strickland v. Mobile Towing & Wrecking Co., Inc., 293 Ala. 348, 354, 303 So.2d 98, 103 (1974), overruled on other grounds, Ogle v. Gordon, 706 So.2d 707, 710 (Ala. 1997); Douglass v. Jones, 628 So.2d 940, 941 (Ala. Ct. App. 1993).

Moreover, under Alabama law, a decedent's estate is defined as, "the property of the decedent whose affairs are subject to this chapter as originally constituted and as it exists from time to time during administration." Code of Ala., 1975 § 43-8-1(8). "Property," of course, is inanimate, and therefore lacks the ability to do anything other than exist, much less file a lawsuit, or engage a lawyer to do so, or perform any other of the myriad of tasks involved in prosecuting a lawsuit. Hence the necessity for a personal representative.

Nothing in this plaintiff's complaint suggests that a proceeding was filed for the administration of Mrs. Chism's probate estate or to probate her will. Because a probate "estate" does not come into existence until a proceeding to administer the same is filed in the appropriate probate court, it has no legal existence, and no lawsuit can be filed on its behalf by the decedent's personal representative. Jones v. Blanton, 644 So.2d 882, 887 (Ala. 1994).

As the above statutes and cases illustrate, Mrs. Chism's duly appointed personal representative is the only person who would have had standing to file and prosecute the present adversary proceeding even if the probate court's judgment had not been transferred and assigned to Mrs. Eldridge's surety. And as discussed before, standing is a jurisdictional requirement. This Court cannot acquire subject-matter jurisdiction over a suit filed by one who lacks standing and therefore such a suit is due to be dismissed. State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999).

Consequently, this Court finds that even if the probate court's judgment had not been transferred and assigned to Mrs. Eldridge's surety, dismissal of this proceeding would still be required because it was not filed by the decedent's personal representative.

This finding however raises an additional issue. As some of the above-cited cases demonstrate, where an action is brought by someone who is not a personal representative, when someone else, or the original person or entity, becomes the duly appointed personal representative, the representative may want to file an action or amend the pending action. That situation is frequently confronted by the fact that a statute of limitations may have passed before the personal representative was appointed. That could be the situation here.

14

The deadline for filing complaints to determine the dischargeability of particular debts in Mrs. Eldridge's bankruptcy case passed on August 22, 2005. <u>Assuming arguendo</u> that the probate court's judgment had not been assigned to Mrs. Eldridge's surety, the next question would be whether or not, and under what circumstances, the plaintiff might be able to amend its complaint pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, applicable to this adversary proceeding through Rule 7017 of the Federal Rules of Bankruptcy Procedure, to substitute the decedent's duly appointed personal representative, if any, as the proper party plaintiff and thereby avoid dismissal.[14]

But to what would such an amendment relate? The filing of a complaint, such as the one here, by someone without standing is considered a <u>nullity</u> and it will not support the relation back of an amendment to the same substituting or adding as plaintiff one who has standing in the event the applicable statute of limitations has run. The court in <u>State v. Property at 2018 Rainbow Drive</u>, 740 So.2d 1025 (Ala. 1999), explains, "In other words, a pleading purporting to amend a complaint, which complaint was filed by a party without standing, cannot relate back to the filing of the original complaint, because there is nothing 'back' to which to relate." <u>Id</u>. at 1028.

Therefore, if no proceeding for the administration of the Mrs. Chism's estate was pending in the probate court when the deadline for filing nondischargeability complaints passed, or, if no application for the appointment of a personal representative, as that term is defined section 43-8-1(24) of the Code of Alabama, was pending on that date, an amendment to the complaint to substitute any personal representative which may have been appointed by the probate court to administer Mrs. Chism's estate subsequent to the passage of that deadline, would be impermissible. <u>Brown v. Mounger</u>, 541 So.2d 463, 464 (Ala. 1989); <u>Downtown Nursing Home, Inc. v. Pool</u>, 375 So. 2d 465, 466 (Ala. 1979), <u>cert. denied</u>, 445 U.S. 930 (1980); <u>Strickland v. Mobile Towing & Wrecking Co., Inc.</u>, 293 Ala. 348, 354, 303 So.2d 98, 103 (1974), <u>overruled on other grounds</u>, <u>Ogle v. Gordon</u>, 706 So.2d 707, 710 (Ala. 1997).

But, if a proceeding for the administration of Mrs. Chism's estate was pending in the probate court when the deadline passed, <u>and</u> a personal representative was appointed by the probate court before the passage of that deadline, an amendment to the complaint to substitute the personal representative as the proper party plaintiff might relate back to the date when the complaint was filed. <u>Ellis v. Hilburn</u>, 688 So.2d 236, 238 (Ala. 1997); <u>Holyfield v. Motes</u>, 565 So.2d 186, 187 (Ala. 1990). Furthermore, such an amendment might relate back in the limited circumstance where an application for the appointment of a personal representative was pending in the probate court when the deadline passed, even if the appointment was not actually made until after the passage of the deadline. <u>Ogle v. Gordon</u>, 706 So.2d 707, 710 (Ala. 1997).

---

[14] Rule 17(a) reads, "Every action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P 17(a).

15

Case 05-00190-BGC    Doc 31    Filed 08/30/06    Entered 08/30/06 12:44:17    Desc Main
Document    Page 15 of 16

<u>But</u>, as discussed above, in either event, this plaintiff lacked standing to prosecute the present proceeding because the judgment which it now seeks to have declared nondischargeable was assigned and transferred by the probate court to Mrs. Eldridge's surety. Consequently, any question as to whether or not the plaintiff would otherwise have to be allowed the opportunity to amend its complaint pursuant to Rule 17(a) to substitute the decedent's duly appointed personal representative as the proper party plaintiff is purely academic.

### VI. Conclusion

Based on the foregoing, the Court finds that the plaintiff did not have, and does not have standing to bring the pending action. Because the plaintiff does not have standing, this Court does not have jurisdiction to hear the pending action. Therefore the pending action is due to be dismissed.

A separate order will be entered in conformity with this memorandum opinion.

Done this the 30th day of August, 2006.

/s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BGC:sm

xc: Debtor
William C. Veal, attorney
Ronald E. Boackle, attorney